**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| **SHELIA GRAY,** | ) |
| | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )        **CIVIL ACTION NO. 5:21-cv-52 (MTT)** |
| | ) |
| **THE BOARD OF TRUSTEES OF THE** | ) |
| **GEORGIA MILITARY COLLEGE,** | ) |
| | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

## ORDER

This case involves Title VII, 42 U.S.C. § 1983, Age Discrimination in Employment Act ("ADEA"), Americans with Disabilities Act ("ADA"), and Rehabilitation Act ("RA") claims stemming from Plaintiff Shelia Gray's employment at Georgia Military College ("GMC").  Doc. 8.  Gray also raises claims of retaliation under the ADA, RA, and Title VII.  *Id.*  Defendant the Board of Trustees of the Georgia Military College ("the Board") moved for partial judgment on the pleadings under Federal Rule of Civil Procedure 12(c).  Doc. 10.  In that motion, the Board argues Eleventh Amendment immunity precludes Gray's § 1983, ADEA, and ADA claims.  *Id.* at 3.  The Board further argues that Gray's Title VII and ADA retaliation claims, ADA claims, and portions of Gray's Title VII and ADEA claims should be dismissed for failure to exhaust administrative remedies*.  Id.* at 3-4.  Finally, the Board argues Gray has failed to state a claim with regard to certain discrete acts alleged in her Title VII and ADEA claims.  *Id.* at 4.

Following oral argument, the Court converted the Board's Rule 12(c) motion to a motion for summary judgment and granted the parties a sixty-day period to conduct limited discovery on the issues of Eleventh Amendment immunity and exhaustion. Doc. 23. Once that limited discovery period was complete, the parties were instructed to file supplemental briefing with accompanying statements of disputed and undisputed facts. *Id.* at 1-2. The parties have now done so. Docs. 24; 24-1; 26; 26-1; 26-2; 28; 28-1.

For the following reasons, the Board's converted motion for summary judgment (Doc. 10) is **GRANTED in part and DENIED in part**. As to Gray's ADEA and ADA claims, the Board's motion is **GRANTED** on Eleventh Amendment immunity grounds. The Board's motion on Gray's § 1983 claim is **GRANTED** because the Board is not a person for the purposes of § 1983. With respect to Gray's Title VII retaliation claim and other Title VII claims not within the scope of her first EEOC charge of discrimination, the Board's motion is **GRANTED** on exhaustion grounds. Finally, as to the Board's argument that the remaining portions of Gray's Title VII claim should be dismissed for failure to state a claim, that motion is **GRANTED** with respect to Gray's failure-to-promote claims moved upon by the Board but **DENIED** with respect to Gray's May 2019 unequal pay raise and failure-to-train claims. Accordingly, only Gray's May 2019 unequal pay raise claim and failure-to-train claims that were timely filed survive, in addition to her June 2020 termination not moved upon by the Board. Those Title VII claims—encompassed in Count I of Gray's complaint—in addition to Gray's RA claims not at issue in this motion (Counts V, VII and X), will proceed to discovery.

## I. BACKGROUND

The Board hired Gray in September 2015 and promoted her in 2018 to the position of Administrative Assistant in the Human Resources Department.  Doc. 8 ¶ 10.  Gray is African American, over forty, and has been diagnosed with heart disease which makes her vulnerable to COVID-19.  *Id*. ¶¶ 12, 17.  While the relevant specifics of Gray's allegations will be covered later in this Order, suffice it to say that things went poorly as time went on, at least from Gray's perspective.  *See id*.  On June 30, 2020, Gray was terminated.  *Id*. ¶¶ 64-65.

After her termination, Gray filed her first charge with the EEOC on September 10, 2020, alleging race and age discrimination.[1]  Doc. 10-1.  Gray received her no-cause letter as to the first charge on November 10, 2020.  Doc. 10-2.  On December 23, 2020, Gray filed a second charge with the EEOC alleging disability discrimination in violation of the ADA.  Doc. 10-3.  The EEOC issued a right to sue letter with respect to the second charge on March 12, 2021.  Doc. 10-4.  On February 8, 2021, Gray filed her complaint and her amended complaint on May 4, 2021.  Docs. 1; 8.  Gray's complaint as amended alleges ten counts: (1) Title VII race discrimination (Count I); (2) §1983 race discrimination (Count II); (3) ADEA age discrimination (Count III); (4) disability discrimination in violation of Title I of the ADA based on termination (Count IV); (5)

---

[1] In her amended complaint, Gray alleged she submitted her first charge to the EEOC on July 7, 2020.  Doc. 8 ¶ 78.  "However, the attached EEOC charge indicates that Plaintiff signed the alleged charge on September 10, 2020."  Doc. 10 at 8 n.3.  Gray's response noted "[e]ven if Ms. Gray's initial inquiry with the EEOC was not used as the time of filing for her Charge—which it should—Ms. Gray submitted her first Form 5 Charge of Discrimination to the EEOC on September 10, 2020."  Doc. 14 at 12.  Gray cited no case law in support of this argument, nor did she address the argument in her subsequent briefs.  *See* Docs. 14; 20; 26; 30.  Accordingly, the Court considers Gray's argument abandoned and accepts as undisputed that her first EEOC charge was filed on September 10, 2020.  *See Moore v. Camden Prop. Tr.*, 2019 WL 11441431, at *3 (N.D. Ga. Mar. 26, 2019) (collecting cases for the proposition that "when an argument is raised that a claim is subject to dismissal, and the non-moving party fails to respond to such an argument, such claims are deemed abandoned"), *aff'd*, 816 F. App'x 324 (11th Cir. 2020).

disability discrimination in violation of the RA (Count V); (6) disability discrimination in violation of Title I of the ADA based on failure to accommodate (Count VI); (7) disability discrimination in violation of the RA based on failure to accommodate (Count VII); (8) Title VII retaliation (Count VIII); (9) ADA retaliation (Count IX); and (10) RA retaliation (Count X).  Doc. 8.

The Court granted limited discovery and converted the Board's motion to a motion for summary judgment for the limited purpose of resolving Eleventh Amendment immunity and exhaustion.[2]  Doc. 23.  As such, three different standards govern the Board's motion: (1) the motion for summary judgment standard governs the Board's Eleventh Amendment immunity and § 1983 arguments; (2) the exhaustion specific standard applies to the Board's failure to exhaust arguments; and (3) the motion to dismiss standard applies to the Board's argument that Gray fails to state a claim with respect to the portions of her Title VII count that were properly exhausted.

## II. STANDARD

### A. Summary Judgment

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A factual dispute is not genuine unless, based on the evidence presented, "'a reasonable jury could return a verdict for the nonmoving

---

[2] As discussed in the Court's order granting the Board's motion to strike, it was not necessary to convert the Board's motion to dismiss for lack of exhaustion to a motion for summary judgment because the Court can consider matters outside the pleadings in resolving exhaustion issues.  Doc. 33.  Although Gray's lawyer was aware of this, *see Chesnut v. CC Servs., Inc.*, 2020 WL 1433876 (M.D. Ga. Mar. 24, 2020), he took the position in his initial briefs that matters outside the pleadings could not be considered, and therefore, he did not produce any evidence refuting the Board's strong arguments that he had failed to exhaust.  Docs. 14 at 11; 20 at 8.  However, as explained at oral argument and in the Court's order converting the motion to summary judgment, the Court afforded Gray an opportunity to gather evidence to rebut the Board's exhaustion arguments.  Docs. 21; 23.  In other words, the Court gave Gray a do-over.

party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The movant may support its assertion that a fact is undisputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).  "When the *nonmoving* party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material *negating* the opponent's claim[]' in order to discharge this 'initial responsibility.'"  *Four Parcels of Real Prop.*, 941 F.2d at 1437-38 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  Rather, "the moving party simply may 'show[ ]—that is, point[ ] out to the district court—that there is an absence of evidence to support the nonmoving party's case.'"  *Id.* (alterations in original) (quoting *Celotex*, 477 U.S. at 324).  Alternatively, the movant may provide "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial."  *Id.*

The burden then shifts to the non-moving party, who must rebut the movant's showing "by producing … relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (citing *Celotex*, 477 U.S. at 324).  The non-moving party does not satisfy its burden "if the rebuttal evidence 'is merely colorable, or is not significantly probative' of a disputed fact."  *Id.* (quoting *Anderson*, 477 U.S. at 249-50).  Further, where a party fails to address another party's assertion of fact as required by Fed. R. Civ. P. 56(c), the Court

may consider the fact undisputed for purposes of the motion.  Fed. R. Civ. P. 56(e)(2).

However, "credibility determinations, the weighing of the evidence, and the drawing of

legitimate inferences from the facts are jury functions, not those of a judge[.]  The

evidence of the non-movant is to be believed, and all justifiable inferences are to be

drawn in his favor."  *Anderson*, 477 U.S. at 255.

## B. Exhaustion

Plaintiffs proceeding under Title VII must exhaust their administrative remedies

by filing a charge with the EEOC before bringing their claims in federal court.  *See* 42

U.S.C. § 12117(a) (incorporating 42 U.S.C. § 2000e-5); *Zillyette v. Cap. One Fin. Corp.*,

179 F.3d 1337, 1339 (11th Cir. 1999) (applying the Title VII exhaustion requirement to

an ADA claim) (citations omitted).  The defense of failure to exhaust non-judicial

remedies raises a matter in abatement.  *Bryant v. Rich*, 530 F.3d 1368, 1374-75 (11th

Cir. 2008) (citations omitted); *see Chesnut*, 2020 WL 1433876, at *3 (applying *Bryant* to

claims subject to Title VII).  Like other matters in abatement, *e.g.*, jurisdiction, venue,

and service of process, a district court may—indeed, necessarily must—consider facts

outside the pleadings and resolve factual disputes to determine whether an exhaustion

defense has merit "so long as the factual disputes do not decide the merits and the

parties have sufficient opportunity to develop a record."  *Id.* at 1376 (citations omitted).

*See also, e.g., Snow v. Cirrus Educ. Grp.*, 2017 WL 6001502, at *3 (M.D. Ga. Dec. 4,

2017); *Akkasha v. Bloomingdale's, Inc.*, 2019 WL 7480652, at *3 (S.D. Fla. Dec. 18,

2019).  Plaintiffs who raise claims subject to the exhaustion requirement bear "the

burden of proving all conditions precedent to filing suit[.]"  *Maynard v. Pneumatic Prods.*

*Corp.*, 256 F.3d 1259, 1262 (11th Cir. 2001).  Thus, Gray must show her Title VII claims were exhausted.

## C. Judgment on the Pleadings

The Federal Rules of Civil Procedure require that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  To avoid dismissal pursuant to Rule 12(b)(6), a complaint must contain sufficient factual matter to "'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  A claim is facially plausible when "the court [can] draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible."  *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (internal quotation marks and citations omitted).

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff."  *FindWhat Inv'r Grp. v. FindWhat.com.*, 658 F.3d 1282, 1296 (11th Cir. 2011) (internal quotation marks and citations omitted).  But "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal."  *Wiersum v. U.S. Bank, N.A.,* 785 F.3d 483, 485 (11th Cir. 2015) (internal quotation marks and citation omitted).  The complaint must "give the defendant fair notice of what the … claim is and the grounds upon which it rests."  *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted).  Where there are dispositive issues of law, a court may dismiss a claim regardless of the alleged facts.  *Patel v.*

*Specialized Loan Servicing, LLC*, 904 F.3d 1314, 1321 (11th Cir. 2018) (citations omitted).

## III. DISCUSSION

### A. Eleventh Amendment Immunity Precludes Gray's ADEA and ADA Claims

"Under the traditional Eleventh Amendment paradigm, states are extended immunity, counties and similar municipal corporations are not, and entities that share characteristics of both require a case-by-case analysis." *United States ex rel. Lesinski v. S. Fla. Water Mgmt. Dist.*, 739 F.3d 598, 601 (11th Cir. 2014) (citing *Mt. Healthy Cty. Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977)).  In the Eleventh Circuit, this case-by-case analysis is conducted by applying the factors set forth in *Manders v. Lee*. 338 F.3d 1304, 1308-09 (11th Cir. 2003).  When a county or municipality is acting in concert with an agent or instrumentally of the state, a *Manders* analysis is appropriate to determine the agency's status as either a state or local government actor when performing the specific function at issue.  *Monroe v. Fort Valley State Univ.*, ___F. Supp. 3d___, 2021 WL 5451145, at *6 (M.D. Ga. Nov. 22, 2021) (citations omitted).

Gray argues that the Board has not established that it is an "arm of the state" entitled to Eleventh Amendment immunity with regard to the particular function of personnel decisions and actions.[3]  Docs. 14 at 6-9; 20 at 3-7; 26 at 5-15.  Because the

---

[3] It is well settled that Eleventh Amendment immunity precludes ADEA claims against the states.  *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 66-67 (2000); *Stroud v. McIntosh*, 722 F.3d 1294, 1303 (11th Cir. 2013) ("The Supreme Court has made it clear that the ADEA is unconstitutional as applied to the states[.]").  As to the ADA, states are entitled to immunity for claims brought under Title I of the Act, as Gray did here.  *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 360 (2001).  Gray's Title V ADA retaliation claim suffers the same fate because "courts in this circuit have been unanimous in extending the reasoning of *Garrett* to Title V, so long as the underlying allegation concerns Title I."  *Battle v. Georgia Dep't of Corr.*, 2021 WL 3824804, at *3 (M.D. Ga. Aug. 26, 2021) (collecting cases) (citation omitted).

Board failed to address the particular function at issue in this case, Gray argues, the Board necessarily failed to "carry its burden with respect to its claimed immunity defense." Doc. 26 at 7. In response, the Board contends Gray "failed to address Defendant's argument that a *Manders* analysis is not required here." Doc. 28 at 1-2. Even if a *Manders* analysis is required, the Board argues that such an analysis favors a finding of immunity. *Id.* at 2-3.

Gray cites the Court's recent order in *Monroe v. Fort Valley State University* for the proposition that "the function being performed by a government body is often critical to the *Manders* analysis in a variety of civil actions." Doc. 26 at 6 n.1 (citing ___F. Supp. 3d___, 2021 WL 5451145 (M.D. Ga. Nov. 22, 2021). Gray clearly misunderstands *Monroe*.[4] In *Monroe*, this Court held "when a state-created entity only serves the state, a *Manders* analysis is a pointless exercise." 2021 WL 5451145 at *6. As in *Monroe*, that is the case here. Specifically, this Court explained:

> Monroe does not suggest that the function at issue was performed for or on behalf of some other entity. She just argues that the Board hasn't proved the function was performed for or on behalf of the state. That is not how it works. In effect, Monroe asks the Court to examine the function to determine whether it is a function states typically perform. Neither *Manders* nor any other case has suggested that Eleventh Amendment immunity turns on such a determination. If that were so, nearly every Eleventh Amendment immunity defense would require courts to pass judgment on whether particular activities of state agencies should enjoy the protection of the Eleventh Amendment. But the question is whether the state agency is performing a function as or on behalf of some non-state governmental entity. That is why *Manders* analysis is frequently necessary when sheriffs are sued, but almost never necessary when the defendant is a state agency that does not also act as a non-state governmental entity.

*Id.*

---

[4] In fairness to Gray, *Monroe* was entered on November 22, 2021, nearly a month after oral arguments and the initial briefing in this case. Nonetheless, the Board heavily cites *Monroe* in its supplemental briefing, and as best the Court can tell, Gray simply pretends *Monroe* does not exist.

"Thus, [Gray's] brief begs the question—if Defendant is a public entity, but does not act as an arm of the state in hiring or firing the college's employees, then on whose behalf does it operate?"  Doc. 28 at 2.  As the Board notes, Gray has completely failed to address that issue.[5]  *See generally* Docs. 14; 20; 26.  But Gray raises *Manders* and the Court will address it, if for no other reason than to demonstrate why it is a pointless exercise.  *Monroe*, 2021 WL 5451145 at *6.  Under *Manders*, whether an agency is an "arm of the state" is a "function-specific" inquiry determined by examining four factors: "(1) how state law defines the entity; (2) what degree of control the state maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity."  338 F.3d at 1308-09.

*1. Definition of the Board Under Georgia Law*

The state legislature created the Board and designated it "a public authority, a body corporate and politic … which shall be deemed an instrumentality of this state and a public corporation."  O.C.G.A. § 20-3-541.  GMC is a statewide public educational institution, "dedicated to providing a high-quality military education to the youth of this state … [and its] educational programs [are] subject to the availability of funds appropriated by the General Assembly."  Doc. 26-1 ¶ 2; O.C.G.A. § 20-3-560.  As directed by the General Assembly, "[t]he student enrollment of the college shall reflect as closely as possible the racial and demographic makeup of the state."  O.C.G.A. § 20-

---

[5] Gray cites *Ross v. Jefferson Cty. Dep't of Health*, 701 F.3d 655, 659-60 (11th Cir. 2012) as a case "similar to the instant proceeding" to underscore the importance of a function specific *Manders* analysis. Doc. 26 at 6.  But that case involved a *county* health department, thus triggering the question of whether the health department was acting on behalf of the *county* or the *state* when terminating employees. *Ross*, 701 F.3d at 659-60.  In short, for *Ross* to be at all analogous to the "instant proceeding," Gray would have to propound how the Board was "performing discrete functions on behalf of both the state and another entity[.]"  *Monroe*, 2021 WL 5451145 at *6.

3-560.  Accordingly, the Georgia Court of Appeals has described GMC as "a state institution" and as such, held it is entitled to sovereign immunity.[6]  *Bd. of Trustees of Ga. Mil. Coll. v. O'Donnell*, 352 Ga. App. 651, 653-54, 835 S.E.2d 688, 691-92 (2019) (citing *Ga. Mil. Coll. v. Santamorena*, 237 Ga. App. 58, 59, 514 S.E.2d 82, 84 (1999). This factor clearly weighs in favor of immunity, and Gray's arguments to the contrary are utterly without merit.  *See Monroe*, 2021 WL 5451145 at *6 ("The Board does not derive its power to educate Georgia citizens from the federal government, nor does that power come from a county or municipality; rather, this power is exclusively derived from a constitutional mandate and the General Assembly.").

### 2. The State's Degree of Control Over the Board

The degree of control exercised by the state of Georgia weighs unquestionably in favor of immunity.  Specifically, the legislature prescribes the composition of the Board and the term limits board members may serve.[7]  O.C.G.A. §§ 20-3-542-544.  The legislature expressly delegates significant authority to the Board to include the power "[t]o elect or appoint professors, educators, stewards, or any other officers necessary for

---

[6] Whether an entity functions as an "arm of the state" is "a federal question with a federal standard, but whether that standard is met will be determined by carefully reviewing how the agency is defined by state law." *Versiglio v. Bd. of Dental Examiners of Ala.*, 686 F.3d 1290, 1291 (11th Cir. 2012) (citing *Regents of the Univ. of Calif. v. Doe*, 519 U.S. 425, 429 n.5 (1997)).  States have "extremely wide latitude in determining their forms of government and how state functions are performed." *Abusaid v. Hillsborough Cnty. Bd. of Cnty. Comm'rs*, 405 F.3d 1298, 1303 (11th Cir. 2005).  Accordingly, the federal judiciary must give "great deference to how state courts characterize the entity in question" to avoid the "incongruous result of having a 'state agency' that is immune from suit under state law but not federal law. *Versiglio*, 686 F.3d at 1292-93; *see also Ross*, 701 F.3d at 659-60 (holding county boards of health are "arms of the state" because Alabama courts have uniformly treated county boards of health as state agencies).

[7] Gray cites O.C.G.A. § 20-3-542 for the proposition that "[c]ritically, it is the citizens of the City of Milledgeville, not the State government, that get to determine who serves on Defendant's Board."  Doc. 20 at 5.  But Gray does not argue that the Board performs any function on behalf of the City of Milledgeville.  *Critically*, it is the Georgia legislature that *allows* citizens of the City of Milledgeville to comprise the Board.  *See* O.C.G.A. § 20-3-542.

the Georgia Military College; to discontinue or remove them as the good of the college may require; and to fix their compensations," and "to determine the policy and shape the conduct of the college."  O.C.G.A. § 20-3-546(2)-(3).  The Board is also subject to strict oversight by the Governor and required to submit "annual reports of its transactions, together with such information as is necessary to show the condition of the Georgia Military College and with such suggestions as it may deem conducive to the good of the college."  O.C.G.A. § 20-3-548.

The gist of Gray's argument as to the second factor appears to be that because the Board maintains authority over its own personnel actions, the state does not exercise control over these functions.  Doc. 26 at 9-11.  In essence, Gray "seeks to prove that 'the State' does not exercise control over [the Board's] personnel actions by presuming that [the Board] is not part of 'the State.'"  Doc. 28 at 4.  But just because the General Assembly chose to delegate authority to the Board does not mean the Board is not acting as an "arm of the state" when it promotes, terminates, or otherwise disciplines an employee.  *Monroe*, 2021 WL 5451145 at *7.  Without identifying meaningful county or municipal involvement in the Board's hiring and firing process, Gray's proffered evidence of the Board's autonomy as to this function is irrelevant.   *See id.* ("Thus, the Board is not required to identify any 'meaningful state prescribed restrictions' because the Board is only subject to the control of the State.").

### 3. Where the Board Derives Its Funding

"Over the past seven (7) years, GMC received approximately 30% of its operating revenues from the State,"[8] with state funds typically serving as the institutions second-largest source of revenue.[9]   Doc. 26-1 ¶¶ 4-5.  It is undisputed that neither the Board nor GMC itself receives funding from the City of Milledgeville.  *Id.* ¶ 7. Nonetheless, Gray argues that the third factor weighs in her favor because the Board "has failed to provide a single example of how it derives its funds from the State of Georgia" in the context of making personnel decisions.  Doc. 26 at 12.  As previously discussed, states are extended immunity, counties and similar municipal corporations are not.  *Mt. Healthy Cty. Sch. Dist. Bd. of Educ.*, 429 U.S. at 280.  Gray does not allege let alone produce evidence that the Board is acting on behalf of a county or municipality when hiring or firing personnel.  And the Board is certainly not a private entity because it remains subject to rigorous financial oversight by the state.  *See* O.C.G.A. § 20-3-561 (the Board "shall provide annually to the Board of Regents of the University System of Georgia or the Technical College System of Georgia copies of budgetary requests submitted by the Georgia Military College to the Office of Planning and Budget and copies of audit reports concerning the expenditure of such funds.").  Therefore, the third *Manders* factor clearly favors the Board.  *Monroe*, 2021 WL 5451145 at *7.

---

[8] Gray objected to the Board's fourth and fifth statement of facts on the grounds that the Board's Vice President of Human Resources—who provided this information through an affidavit—was not shown competent to testify to the Board's finances.  Doc. 26-1 ¶¶ 4-5.  That objection is **OVERRULED**.

[9] "The Georgia Military College shall receive any designated funds appropriated by the General Assembly through the Board of Regents of the University System of Georgia or the Technical College System of Georgia."  O.C.G.A. § 20-3-561.

*4. Liability and Risk of Judgment*

The last factor is generally considered the most important in making Eleventh Amendment immunity determinations. *See Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 48 (1994). In this case, it is undisputed the Board maintains state-sponsored liability insurance with the Georgia Department of Administrative Services. Doc. 26-1 ¶¶ 21-22. All that is required of the Board is the establishment of the state's potential responsibility for a monetary judgment, which it has done. *Monroe*, 2021 WL 5451145 at *8. Gray's argument that the Board "is a separate and distinct legal entity" is unavailing if not outright frivolous. Doc. 26 at 15. The Georgia General Assembly defines the Board as a "public authority" and "instrumentality of the state." O.C.G.A. § 20-3-541. Therefore, by definition, the Board cannot act as a "separate and distinct" legal entity from the State of Georgia. *Id.* Because Gray does not allege the Board, as an "arm of the state," is acting in concert with a county or municipality in carrying out employment decisions, clearly the state, and only the state, would be liable for any judgment entered against it. *Monroe*, 2021 WL 5451145 at *8.

Because the Board only serves the state, all four *Manders* factors support a finding of immunity. The Board is entitled to Eleventh Amendment immunity as to Gray's ADEA and ADA claims.

## B. The Board is Not a Person for the Purposes of 42 U.S.C. § 1983

States—and, by extension, arms of the state—are not "persons" within the meaning of § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). And § 1983 subjects only persons to monetary liability for violations of constitutional rights. Consequently, it is simply not possible to hold the Board liable for monetary damages

under § 1983 when the Board is acting as an arm of the state, as the Court has determined the Board is here. *Carr v. Bd. of Regents of Univ. Sys. of Georgia*, 249 F. App'x 146, 148 (11th Cir. 2007) ("Because the Board is undeniably a state entity that was acting in its official capacity, we agree with the district court that the Board is not a 'person' under [Section 1983]."); *see also Lesinski*, 739 F.3d at 606 n.9. Accordingly, Gray's § 1983 claim fails because the Board is an "arm of the state," and thus, not a "person" for the purposes of § 1983.

## C. Gray's Title VII Retaliation Claim and Some of Her Other Title VII Claims are Dismissed for Failure to Exhaust

The Board argues Gray's Title VII retaliation claim (Count VIII) and her Title VII claims (Count I), except for claims that concern her May 2019 unequal pay raise, denial of training, and June 2020 termination, should be dismissed for failure to exhaust administrative remedies. Docs. 10 at 6-10; 16 at 4-6.

Claims in a subsequent lawsuit are typically limited to the scope of the EEOC charge. *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004). While claims that "amplify, clarify, or more clearly focus the allegations in the EEOC complaint" are allowed, "allegations of new acts of discrimination are inappropriate." *Id.* at 1279-80 (internal quotation marks and citation omitted). However, "the scope of an EEOC complaint should not be strictly interpreted," and courts should be "extremely reluctant to allow procedural technicalities to bar claims." *Id.* at 1280 (internal quotation marks and citation omitted). "As long as allegations in the judicial complaint and proof are 'reasonably related' to charges in the administrative filing and 'no material differences' between them exist, the court will entertain them." *Ray v. Freeman*, 626

F.2d 439, 443 (5th Cir. 1980) (citation omitted).[10]  In a non-deferral state like Georgia, a

Plaintiff must file an EEOC charge within 180 days of the last alleged discriminatory act.

*Watson v. Blue Circle, Inc.*, 324 F.3d 1252, 1258 (11th Cir. 2003).

Gray filed two EEOC charges in connection with this matter.[11]  Docs. 26-1 ¶ 23;

10-1; 10-3.  In her first charge, filed September 10, 2020, Gray alleged race and age

discrimination.  Doc. 10-1.  Specifically, Gray alleged:

> Since April 2019, and continuing, I have been subjected to a hostile work
> environment in that I was denied a promotion, and an equal pay raise than that of
> my similarly situated coworkers.  Starting in March 2020, I was denied training
> and inclusion on the implementation of new software within the department.  On
> June 30, 2020, I was laid off.  The reason given for my lay off was 'due to budget
> cuts.'  I believe I have been discriminated against because of my race[.]

*Id.*

### 1. Gray's Title VII Claims (Count I)

In Count I of her amended complaint, Gray alleges that the Board unlawfully

failed to promote her to an analyst position; failed to promote her to other unspecified

positions during her tenure; gave her disproportionately lower pay raises; failed to

provide her with opportunities for training; excluded her from certain internal meetings;

and eliminated her position without considering her for another available position, all in

violation of Title VII.  Doc. 8 ¶¶ 84-97.  She does not in Count I or elsewhere allege a

Title VII hostile work environment claim.  The Board argues that all claims arising from

discrete acts that did not occur within the 180 days preceding the filing of Gray's first

---

[10] The Eleventh Circuit has adopted as binding precedent the decisions of the former Fifth Circuit
rendered prior to October 1, 1981.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

[11] Gray's second EEOC Charge (Doc. 10-3) only raised claims under the ADA.  Doc. 26-1 ¶¶ 27-28.
Because the Court has already disposed of Gray's ADA and ADEA claims on Eleventh Amendment
immunity grounds, the Court will not consider whether Gray's second EEOC charge was timely filed or
address exhaustion issues with respect to the ADEA claims in her first charge.

charge must be dismissed, except for those claims subject to the Lilly Ledbetter Fair

Pair Act of 2009 which will be discussed in more detail below.  Docs. 10 at 10; 16 at 4-6.

Gray only addresses her claims in Count I in her initial brief and then only briefly.

*See* Doc. 14.  Gray argues that "'claims are allowed if they amplify, clarify, or more

clearly focus the allegations in the EEOC complaint, [although] *allegations of new acts*

*of discrimination are inappropriate*.'"  *Id.* at 11 (emphasis added).  Then Gray simply

states that her first charge "described a [sic] ongoing pattern of discrimination, including

as just two examples, the failure to promote in April 2019, and an unequal pay raise at

sometime after that."  *Id.*  Gray's point is unclear.  She acknowledges she cannot allege

new acts of discrimination.  *Id.*  And she does not assert a hostile work environment

claim; she only asserts claims for discrete acts.[12]  *See* Docs. 8; 10-1.

In short, Gray simply fails to address the Board's argument.  Accordingly, except

as discussed below, Gray's claims in Count I are limited to claims for discrete acts that

occurred within the 180 days preceding the filing of her first charge on September 10,

2020.[13]  *Gregory*, 355 F.3d at 1280.

*2. The Ledbetter Act Does Not Save Gray's Untimely Failure-to-Promote Claims*

Gray asserts the Eleventh Circuit's decision in *Ledbetter v. Goodyear Tire and*

*Rubber Co., Inc.,* "actually caused Congress to Amend Title VII" and that amendment

---

[12] While the particulars of Gray's EEOC charge allege a "denied promotion" and an "equal pay raise"
sometime after April 2019 in addition to an ongoing denial of training starting in March 2020, Gray also
states the earliest and latest date of discrimination was June 30, 2020—the date of her termination.  Doc.
10-1.

[13] The Board has not yet contended that any of these events are not adverse employment actions.  Also,
the Court recognizes the vagueness of this ruling, but on the current record it is the best that can be
done.  However, Gray is **ORDERED** to provide within twenty-one days a verified statement to the Board
listing in detail the discrete acts raised in Count I that occurred after March 14, 2020.

saves her discriminatory pay raises and failure-to-promote claims even if those claims arose from discrete acts outside of the 180-day period preceding the filing of her first charge. Doc. 14 at 12 (citing 421 F.3d 1169 (11th Cir. 2005)). Actually, *Ledbetter* was affirmed by the United States Supreme Court and then overturned due to legislative action in 2009. *See Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 550 U.S. 618 (2007), *overturned due to legislative action* (Jan. 29, 2009). In any event, the Ledbetter Act extends the time in which victims of discrimination can challenge and recover for "discriminatory compensation decisions or other practices." Pub. L. No. 111–2, 123 Stat. 5 (2009). Under the Act, an "unlawful employment practice" occurs in the following situations: (1) "when a discriminatory compensation decision or other practice is adopted," (2) "when an individual becomes subject to a discriminatory compensation decision or other practice," and (3) "when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice." 42 U.S.C. § 2000e–5(e)(3)(A). "The Act did not, however, alter the limitations period for discrete employment actions." *Tarmas v. Sec'y of Navy*, 433 F. App'x 754 (11th Cir. 2011) (citing *Noel v. The Boeing Co.*, 622 F.3d 266, 271 (3d Cir. 2010). Failure-to-promote claims constitute discrete employment actions that are not covered by the Act. *See Albritton v. Sec. of State*, 2010 WL 4312868, at *14 (M.D. Ga. Oct. 25, 2010) (citing *Schuler v. Pricewaterhouse Coopers*, L.L.P., 595 F.3d 370, 374 (D.C. Cir. 2010)).

The Board agreed with Gray, at least with respect to her May 2019 discriminatory pay claim, and withdrew its motion seeking to dismiss that claim on exhaustion grounds.

Doc. 16 at 4.  Because Gray's April 2019 failure-to-promote claim is not saved by the Ledbetter Act and was filed well outside of the 180-day period in which Gray was required to file her charge of discrimination, that claim is **DISMISSED** as untimely.[14] *Watson*, 324 F.3d at 1258.  And while the Ledbetter Act could save Gray's remaining discriminatory pay claims had those claims been properly exhausted, that is not the case here.  In her first EEOC charge, Gray only alleged she was denied "an equal pay raise."  Doc. 10-1.  Gray's amended complaint amplified and clarified that charge by alleging the discriminatory pay raise occurred in May 2019.[15]  Doc. 8 ¶ 24.  Accordingly, only the May 2019 discriminatory pay raise claim has been exhausted and only that claim shall proceed.

### 3. Gray's Title VII Retaliation Claim (Count VIII)

Gray also brings a Title VII retaliation claim in Count VIII of her complaint.  Doc. 8 ¶¶ 150-55.  Gray's retaliation claim alleges she was terminated by the Board after she complained to "several members of management" of a colleague's racially discriminatory comment.  *Id.*  ¶¶ 152-54.  Gray's first EEOC charge fails to check the box for "retaliation," does not mention retaliation, and does not allege she engaged in protected activity.  *See* Doc. 10-1.  Gray's amended complaint alleges her retaliation claim was exhausted by her second EEOC charge.  Doc. 8 ¶ 81.  As Gray's counsel acknowledged, that allegation is baseless.  Doc. 26-1 ¶¶ 27-28.  Gray's second charge only alleged discrimination under the ADA.  *Id.*  And, as discussed, Gray's first charge

---

[14] Gray was required to file an EEOC charge within 180 days of the Board's failure to promote her in April 2019; however, she did not file her first EEOC charge until September 10, 2020.  Doc. 10-1.  Assuming the Board failed to promote her on the last day of the month, Gray's failure-to-promote claim expired on October 27, 2019, 180 days from April 30, 2019.

[15] Perhaps Gray, in the end, only intended to allege one discriminatory pay raise claim—the May 2019 claim.

made no allegation of retaliation.  Thus, Gray did not exhaust her Title VII retaliation

claim and that claim is **DISMISSED**.  *See Gregory*, 355 F.3d at 1279; *Chesnut*, 2020

WL 1433876, at *5.

### D. Gray's Title VII Unequal Pay Raise and Failure-to-Train Claims Pass Muster But Gray's Unspecified Failure-to-Promote Claims Fail to State a Claim

According to the Board, Gray's May 2019 unequal pay raise claim, failure-to-train

claims, and failure-to-promote claims warrant dismissal for failure to state a claim.  *See*

Docs. 10 at 14-18; 16 at 8-10.  Specifically, the Board appears to argue dismissal is

warranted because Gray failed to allege a *prima facie* case for race discrimination.[16]

*See id*.  However, that is not the proper standard at the pleading stage.

As the Supreme Court made clear, pleading a *McDonnell Douglas prima facie*

case is not necessary to survive a motion to dismiss.  *See Swierkiewicz v. Sorema N.A.*,

534 U.S. 506, 511 (2002) ("This Court has never indicated that the requirements for

establishing a prima facie case under *McDonnell Douglas* also apply to the pleading

standard that plaintiffs must satisfy in order to survive a motion to dismiss.").  That is

because the *prima facie* case under *McDonnell Douglas* "is an evidentiary standard, not

a pleading requirement."  *Id.* at 510.  Thus, the correct inquiry in the context of a motion

to dismiss is not whether the Plaintiff has alleged facts sufficient to make out a classic

*McDonnell Douglas prima facie* case but whether the complaint provides "enough

---

[16] To state a *prima facie* case for unequal pay, Gray must establish that "(1) she belongs to a racial minority; (2) she received low wages; (3) similarly situated comparators outside the protected class received higher compensation; and (4) she was qualified to receive the higher wage."  *Cooper v. S. Co.*, 390 F.3d 695, 735 (11th Cir. 2004), *overruled on other grounds by Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006).  As for the third prong, Plaintiffs and their comparator must be "similarly situated in all material respects."  *Lewis v. City of Union City*, 918 F.3d 1213, 1218 (11th Cir. 2019) (en banc).  To be successful on a failure-to-train claim, "[Plaintiff] must be able to demonstrate that the alleged failure to train had an adverse impact on a substantial term or condition of [her] employment."  *Hanley v. Sports Auth.*, 143 F. Supp. 2d 1351, 1365 (S.D. Fla. 2000).

factual matter (taken as true) to suggest" discrimination, retaliation, or hostile work environment based on race.  *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015) (quotation marks and citations omitted).  A complaint may not survive dismissal, however, if it consists "of only the barest of conclusory allegations without notice of factual grounds on which they purport to be based."  *Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1271 (11th Cir. 2004) (citation omitted).

*1. Gray's Unequal Pay Raise Claim and Failure-to-Train Claims Survive*

In this case, Gray's May 2019 unequal pay raise claim and failure-to-train claims adequately state a claim.  The Board argues Gray's unequal pay raise claim must fail because "[s]he does not allege the racial makeup of the office at the time of the raise" and "she does not allege facts showing that her 'colleagues' were otherwise similarly-situated."  Doc. 10 at 15.  But Gray did allege "she was the only black person in the HR department," (Doc. 14 at 14) (emphasis omitted) in addition to other facts that push her complaint beyond "an unadorned, the-defendant-unlawfully-harmed-me accusation."[17] *See Iqbal*, 556 U.S. at 678.

Similarly, the Board's argument that Gray "has not pled facts plausibly suggesting that Defendant's alleged failure to train her or decision to exclude her from meetings had any impact on any of the terms/conditions of her employment" is without merit.  Doc. 10 at 16.  Gray alleged "she was not provided with opportunities for training,

---

[17] Specifically, Gray cites to paragraph twenty-two of her amended complaint which states "[d]uring her tenure, Ms. Gray also observed other black employees who were denied promotions and many who ultimately resigned from their positions with Defendant as a result of the lack of advancement and other treatment.  As a result of several resignations, Ms. Gray remained the only African American in the Human Resources Department."  Doc. 8 ¶ 22.  While the Board correctly notes "this paragraph provides no guidance as to the racial makeup of the office in May 2019," (Doc. 16 at 8), the Court is confident Gray has pled "enough factual matter (taken as true) to suggest" discrimination based on race.  *See Surtain*, 789 F.3d at 1246.

and she was excluded from internal meetings" on account of her race.  Doc. 8 ¶ 94.

Gray further alleged she was terminated due to budget cuts, and that following her

termination, the Board rehired two employees "[d]espite [the] supposed budget cuts."

Doc. 8 ¶¶  63, 74.  Thus, Gray's failure-to-train claims allow "the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *See Iqbal*,

556 U.S. at 678.

### 2. Gray's Unspecified Failure-to-Promote Claims Fail to State a Claim

As to Gray's failure-to-promote claims, the Board argues these claims must fail

because Gray "has not identified any other promotion beyond the analyst position that

she failed to receive, let alone pled facts showing she was qualified for these

unspecified promotions, or that Defendant acted discriminatorily in failing to promote

her."  Doc. 10 at 18.  In response, Gray contends she "alleged more than sufficient

information for Defendant to know which promotions such allegations refer, particularly

for Defendant to ascertain this information."  Doc. 14 at 14.  This is simply not the

case.[18]  "At a minimum, a discrimination claim alleging failure to promote must identify

which position the plaintiff applied for and was rejected."  *Albritton*, 2010 WL 4312868,

at *13.  Because Gray only alleged she was denied promotion to an analyst position in

April 2019, a claim that is untimely as discussed *supra*, Gray's unspecified failure-to-

promote claims are **DISMISSED without prejudice**.  *Jackson*, 372 F.3d at 1271.

---

[18] In the failure-to-promote context, "the *prima facie* case consists of showing these elements: (1) that the plaintiff belongs to a protected class; (2) that she applied for and was qualified for a promotion; (3) that she was rejected despite her qualifications; and (4) that other equally or less-qualified employees outside her class were promoted."  *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1174 (11th Cir. 2010).

**IV. CONCLUSION**

For the reasons noted, the Board's converted motion for summary judgment (Doc. 10) is **GRANTED in part and DENIED in part**.  The Board's motion is **GRANTED** as to Gray's ADEA, and ADA claims (Counts III, IV, VI and IX) because the Board is entitled to Eleventh Amendment immunity.  Because the Board is not a person for the purposes of § 1983, the Board's motion on that claim (Count II) is **GRANTED**.

The Board's motion on exhaustion grounds is **GRANTED in part and DENIED in part** with respect to Gray's remaining Title VII claims (Counts I and VIII).  The Board's motion as to Gray's April 2019 failure-to-promote claim is **GRANTED** because that claim is untimely.  The Board's motion on Gray's Title VII retaliation claim and unspecified unequal pay claims is **GRANTED** because those claims were clearly not exhausted.  The motion is **DENIED** to the extent it seeks to dismiss discrete acts that occurred within 180 days of Gray filing her first EEOC charge on September 10, 2020.

Finally, the Board's motion on 12(b)(6) grounds is **GRANTED in part and DENIED in part**.  With respect to Gray's May 2019 discriminatory pay claim and failure-to-train claims that were timely filed, the Board's motion is **DENIED**.  As to Gray's remaining failure-to-promote claims that were timely filed, Gray nonetheless fails to state a claim and the Board's motion is **GRANTED**.

In summary, Gray's failure-to-train claims that were timely filed, in addition to her May 2019 unequal pay raise claim that is saved by the Ledbetter Act and her wrongful termination claim that the Board does not move to dismiss, survive.  Those claims—all contained in Count I of her amended complaint—will proceed to discovery, in addition to Gray's RA claims not at issue in this motion (Counts V, VII and X).

**SO ORDERED**, this 7th day of March, 2022.

<u>S/ Marc T. Treadwell</u>
MARC T. TREADWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT